The first case called for oral argument is Lone Oak Estates Homeowners v. Mallette. Counsel, whenever you're ready, you may proceed. Thank you. Good morning. May it please the court. My name is Scott Hendricks, and I represent the appellant, Kevin Mallette, in this matter. This case got here today from an appeal from the Circuit Court in Jackson County, Illinois, judged as a result of an order of summary judgment issued by Judge Kimberly Dahl in favor of the plaintiff, Lone Oak Estates Homeowners' Association v. my client, Kevin Mallette, on an issue related to covenants and restrictions. The issue before the court, as I framed it, is did the trial court err in granting summary judgment to the Homeowners' Association by misinterpreting the covenants and restrictions that are imposed on the subdivision, which Mr. Mallette bought a lot. The relief that I seek is a reversal of that summary judgment and an entry of summary judgment in favor of Mr. Mallette against the Homeowners' Association or an alternative reversal and remand for trial on issues of fact. The facts in this case are that in April of 2008, Mr. Mallette bought a lot in the Lone Oak Estates subdivision. That lot was subject to certain declarations of covenants and restrictions that were reported in 1994 that covered Mr. Mallette's lot as well as other lots in the subdivision. The declarations and covenants are attached to appellant's brief as Appendix C in the total. In the declaration of covenants and restrictions, there are certain articles that are directly relevant to the issue, I believe, in this case. Those are Articles 5 and Article 6. Article 5 addresses or is titled Building Control Committee, and Article 6 is titled General Provisions. Under Article 6, under the General Provisions, there are two sections. Section 5, which deal with size limitations of houses, and Section 6 deals with setback lines as far as where a house can be constructed on the lot. Mr. Mallette submitted plans to the Building Committee, if you will, reflecting a one-story structure that exceeded 2,000 square feet in size with a wraparound porch. Mr. Mallette met with the association's representative at the lot and identified the location on the lot in which that building would be, or which his house would be built. Mr. Mallette did not receive any approval to commence construction on his lot or his house, so he proceeded to commence the construction by starting some dirt work, and as a result of that, the Homeowners Association filed a complaint to enjoin him from construction of his house. I don't believe the facts indicate whether he had them actually before he purchased the lot or not. I believe he had a sketch of the house. I don't believe it was a complete set of plans. He had enough plans to know it was going to be a 2,000 square foot house with a wraparound porch. He had hired a contractor to construct that. I don't know if all the electrical schematics and what were drawn, but he did have enough of a plan to know the size and the type of house he was building. Standard review, as I addressed in my brief, is a standard review with respect to a grant and summary judgment. I believe also that because the Court is interpreting these declarations and restrictions as an interpretation of the contract, there's also a de novo review by this Court. The appellee has inserted in their brief that a order of injunction is addressed by this Court for abuse of discretion. However, I believe that before the Court can even address the issue of whether the judge properly granted an injunction in the trial or at the trial court below, it must first determine whether the Court properly interpreted the restricted covenants, which is a de novo review in which we're asking this Court to overturn Judge Dunlap's interpretation of the restricted covenants. If the Court would look to the declaration of the covenants under the section in which the Committee, or excuse me, the Loan Offering Estates Subdivision Committee relies on is Article V, which states that no improvement or structure of any kind, including without limitation any dwelling, and goes on to recite some other structures, shall be commenced, erected, placed, or maintained upon any lot or track, nor shall any addition, change, alteration therein or thereof be made, unless and until the plans and specifications showing the nature, kind, shape, height, materials, and location of the same shall have been submitted to and approved in writing by the Board of Directors, or by a voting committee composed of two or more representatives appointed by the Board. Now what my client, Mr. Millett, presented to the Building Committee as it defined in this Article V were these plans that identified his house as being greater than 200 square feet with a wraparound porch, and he did identify by physical location on the lot where his house was going to be built, but they did not approve that, nor did they disapprove in writing as such, but they did tell him that he would not be allowed to build his house as such. If the Court would look to Article VI, which is the general provisions in these covenants, there are specific provisions before I go to Article VI, Sections V and Section VI, I would note that in Article V, there is no reservation to the Building Control Committee to make any decisions for reasons such as aesthetics or for any other reason, there's no reservation, nor is there any grant to the Building Control Committee to make any decisions with regard to plans and location on the lot in that Article. So what we did was what we're asking the Court to do is let's look at the document as a whole because the Courts have interpreted, or when interpreting covenants, we look at the document as a whole. We go to the general provisions under Article VI, there is contained in Section V and Section VI are specific requirements set forth for constructing a residence. Section V discusses the size limitations of the dwelling units, and it requires any dwelling unit shall be constructed, and Mr. Millett's plans conform with that. Section VI describes setback lines and tells the owners of the lots that they must construct their house within those setback lines, in this case 25 feet from the lot lines, which is set forth in the affidavits and the record of this case. The Court below made a specific finding that Mr. Millett's plans conformed with these requirements under Article VI. It is our position, and we're asking this Court to interpret these covenants to restrict the Building Committee to Sections V and Section VI with regard to the size of Mr. Millett's house and the location on his lot with respect to his house. With regard to the size of his house, and the reason this is an issue is because one of the options that the Building Committee or the homeowners associate gave Mr. Millett was to put in a walkout basement, which would increase the size of his house substantially. That was one of the options they gave him. Our position is there is nothing in these restrictions or these covenants that grant them the right to dictate to Mr. Millett or any law owner what the size of their house must be. So you're saying unless it was in the document that they couldn't enforce any other items that you would need to build the home unless it was specified in the document itself? Your Honor, I believe that's accurate in this case because of the way these covenants and the case law that says, well, they have the discretion to make these determinations. But if the court looks at those opinions, you will find in those particular covenants a reservation or a grant of right to the Building Committees or the Architectural Committees to make decisions based on aesthetics or any other grounds that they believe is necessary in their discretion. No such language is adopted by these covenants and restrictions. And that is the distinction. Your client, let's just say, could paint the house any color he wanted, polka dot it if he wanted to, because it was not restricted in the document, nor was the aesthetic aspect that it granted to the committee. I agree with you. That's correct, Judge, in this instance. Now, you might argue there might be an argument that it's nuisance in this case, and there is provisions for nuisance in this covenant that does allow the Building Committee to address that. So I believe it's addressed in the nuisance. But there's nothing in the document that gives the committee any authority regarding the aesthetics of the property? That's correct. There is no language in these covenants that grant them any discretion with regard to aesthetics. And I believe a similar case in this is the Supreme Court decision in 1963 of Watts v. Fritz. And in that case, it was an issue of whether a person could subdivide their lot into two and actually build two houses on one lot. But the opinion of the Supreme Court of Illinois in that opinion stated that in essence, if they're going to enforce a restriction or a covenant, it must be expressly stated in the document. And we're relying on that Supreme Court decision and our interpretation of these covenants' restrictions in saying they did not reserve that right or grant to the Building Committee the right to make these decisions based on aesthetics or any other basis. And I would point the Court to Section 5 with regard to the size limitations of the dwelling unit. And again, this I think is part of the interpretation of this document because it does require my client, Mr. Millett, to submit plans and specifications showing the nature, kind, shape, etc. under the Building Control Committee article. And the same shall have been submitted to and approved in writing by the Board. If we go to Section 5, it indicates what that standard is. All constructions of new dwelling units must be certified by the Board of Directors or Building Committee as in compliance with this declaration. That declaration is the declaration set forth in Section 5 with regard to the size limitation of the dwelling units. And it talks about, it says for such approval, all site plans, construction plans and specifications showing the nature and quality of building materials and landscaping plans shall be submitted to the Board or Building Committee for certification prior to commencement of construction. And what they're to certify is that it meets these size limitations in dwelling unit requirements in Section 5 of Article 6. And Judge Dolan specifically found that my client's plans did meet those requirements. And that is the limit of the authority in our position of the committee with regard to this Mr. Millett's house. Are there two questions basically here that he's arguing? One is the setback, front setback because the other homes are set back farther. Is that one objection, one problem you're having? That's my understanding. They're saying that Mr. Millett's house will be closer to the road than the adjoining house. That's right. Within, I understand that. Now the second one is the second problem that they're objecting to is the amount of exposure in the back of the house with the walkout. They're stating that if he put in a walkout basement where he proposed to build his house that the foundation will stick out of the ground too much. And therefore he needs to move his house somewhere else on the lot so that the foundation will not stick out. And that is with the setting it back further or is it setting it in the original position? You know, the one where the setback line. Well, I think if he sets it back closer to the lake then he's going to have greater foundation. And their proposal would, he would have to grade that up to eliminate the exposure of that, of they didn't like the exposure of the block or the concrete. That's correct. But it was my, you know, if you're going to build a house that's a walkout, why have a basement, why not frame the back instead of, it's cheaper and it works better. Well, I agree. But you have to recall that in this case, my client's proposal was a one story house with a wraparound porch, which would not work with a walkout basement. So it'd be very difficult and it would be extremely costly, I believe, to build a, you know, to insert a basement in a house that you never intended to insert a house. You know, and the foundation for that and the pouring of the concrete would be extremely expensive to my client. So, you know, to them to give him an option to build a walkout basement as an option to building a one story house that he intended to Okay, so he didn't intend to, he never intended to walk out. Is that what, Okay, I understand. I'm sorry. Never intended to have a walkout basement. So we're asking the court to look at these covenants and strictly construe them. This court in the Fifth District case of Gerber v. Hamilton said that when interpreting covenants, they should be strictly construe its language and all doubts or ambiguities are resolved in favor of the natural rights against restrictions. Now you have to remember, you know, we have a lot of homeowners or potential homeowners out there that are going around buying up lots of land and one of the first things they're going to do is they're going to look at restricted covenants. You look at these, the way these are drafted appear and you have a plan to build a house that complies with the covenants. You know, a building committee should not be, unless it's I mean, that's the whole point of this case. How many homes or how many lots are out there? How many homes are built there right now when he purchased? I believe there's about 34 lots surrounding that and I believe there are 19 houses. Was it possible, counsel, for him to submit his proposed home plans to the committee before he purchased the lot to inquire with them, hey, I noticed that all these other homes have basements that are in the general vicinity on the lake there. I don't want a basement. I want to do this. Was that possible for him to have done? I think that's possible, your honor. I think in practicality though, as you may be aware, people buy lots necessarily before they even get their home plans built. You know, as the court is aware, a plan is unique. You know, and this is a lot of land that Mr. Millett bought because he thought he could build a one story house on that. It would fit nicely in that subdivision and because there was a lake there. The covenants don't make any distinction between lots that are on the lake and lots that are not on the lake. And now they're making what we believe to be an arbitrary decision to my client imposing greater restrictions because his lot adjoins the lake. I thought I read somewhere in the briefs that it said that all the homes that are currently on the lake do have a basement. I believe that argument has been made at the lower court. Is that in the record? I believe it is, your honor. I believe that's the assertion made by the homeowners association. I believe the facts and I can't say that. You don't think that makes any difference? You think that's irrelevant, doesn't make any difference in the context? I do believe it's irrelevant because when the court interprets the covenants that one of the things, if it finds that it's questionable or there's some ambiguity or there's some doubt in your mind that one of the things you have to try to determine is what is the intent, what was the intent of the parties when they adopted these restrictive covenants. Well these covenants were adopted in 1994 when there were no houses on the lake or otherwise. So there could be no intent with regard to basements or no basements at that particular time. We believe that the court, the lower court was incorrect in its interpretation because it's allowing the committee to adopt greater restrictions or standards that are addressed in this, in these covenants. And that is clearly contrary to the Supreme Court decision in Watts v. Fritz. I do want to note that I mentioned the Gerber v. Hamill decision by this court and I identified a general rule of law that was decided in that. I do want to also indicate that that rule also states that it's not to be used to override or ignore specific language or obvious purpose of the restriction. But again, the specific language, as I pointed out in this court under Article VI, contains what the restrictions are for building size and building location on the lot. And I don't believe that the building committee has any greater right or any right to dictate those to a lot owner because they did not reserve those. It's not expressed in this document. This is different from many other cases cited simply because in the other cases that right, that grant was expressly stated in those covenants and restrictions, which is not, does not appear here. As I said, restrictions on the use of property must be expressly stated in order to be given effect. That is not only stated in the Watts v. Fritz case, but it's also stated in the Sadler v. Creekmore case, which is a third district court case issued in 2004. So because we believe that they basically overstepped their authority in this case, we believe our interpretation of the covenants restrictions case is the proper interpretation. We believe that the trial court erred in her interpretation of the covenants restrictions when it found that there was discretion or some grant or authority given to the building committee in this case. And for that reason, we're in favor of the defendant's case, Kevin Millett, when the alternative to allow us to present evidence on the issues on their grant or their exercise of this discretion at the lower court below.  May it please the court, your honors. My name is Kyle Hudson and myself and Mr. Broome represent the appellee in this case, Lone Oak Estates Homeowners Association. Your honors, the appearance of the homes at Lone Oak Estates matters and the rules of their covenants matter to these homeowners. Article five is very clear. No improvement or structure of any kind, including without limitation, any dwelling shall be commenced unless and until the plans and specifications showing the nature, kind, shape, height, materials, and location of the same shall be submitted to and approved in writing by the association or by the building committee. Article five goes on to say that if construction is commenced without such approval, the law owner shall be enjoined and a mandatory injunction shall be issued. And that's what happened here, your honors. The defendant did not get approval as required under article five to begin his construction, yet he began construction and the lower court granted our motion for summary judgment and enjoined him from constructing his unapproved improvements. The purpose of article five has been, provisions like article five has been addressed in other Illinois courts. In Westfield Homes, the court found that the purpose of such a provision is to afford the mutual protection to the property owners living in the development against injury, whether taken in the form of diminished property values or otherwise that would result from construction or other improvements that were unsightly and bad taste, have variance to neighboring homes and architectural appearance, or otherwise offensive to the proposed or developed standards of the neighborhood. This purpose, as far as the preserving the appearance and the overall character of the community or the subdivision, is also expressly stated in these covenants before us here today, wherein they state that the developers desire to provide for the preservation of the values and amenities in said community and to this end desire to subject the real property to the covenants and restrictions. Further, the covenants say that an association is to be created for the efficient preservation of the values and amenities in said community. How would the value be affected by having a home that didn't have a basement? Well, in this case, your honor, all the homes... I mean, I guess that's what you're intimating, that the committee took into consideration the fact that building a home without a basement would adversely affect the value of the other homes there on the lake. It's a possibility because it would vary and be different from the surroundings. Is there anything in the record to substantiate that? Any, like, realtors that came in or appraisers that came in and said the value of their neighboring homes in this lot are worth X number of dollars now, but if you built one with a basement or without a basement, it would reduce it 5% or 10% or anything like that? No, your honor, there's nothing in the record that says that. But one of the problems here is we're not requiring him to build a basement, so the value without the basement isn't necessary to determine because they gave him an option to create a house exactly like he wanted without a basement if he would simply use filter to cover the exposed foundation. I think, aesthetically, the 5-6 feet of exposed foundation would perhaps lower the general value of the surrounding properties. Some people may like to live in these types of communities where there is some kind of oversight or a committee that looks at everything that is going to be set up in the subdivision, and therefore they feel that they're being protected in their own home values and the proposed improvement structure dwelling that is erected in the subdivision. Other people may not like to live in this type of community where they have every little... they have to get approval for every improvement they put on, but they don't have to live in this community or, as the court suggested earlier, they could get approval prior to ever purchasing the property. Is there a question as to the setback from the front setback, or is this foundation exposure a question after it was moved back further to match the other houses left? I'm not sure the record reflects that. Is there two arguments that he can't build it with the regular setback that's set out in the covenants or with the new setback, which it matches the neighbors? That's my question. I think originally looking at his proposed plans and looking at where it would be in relation to the neighboring homes would be the five to six feet. As you know, the lot slopes, so if you moved it closer, that may reduce some of the exposed foundation, perhaps. Well, is there an argument about both elements? That's what I don't understand. Yeah, his plans were rejected for two reasons. First of all, because it would be five to six feet of foundation block exposed at the back of the house. And secondly, because he was proposing to build this house 15 feet in front of the houses next door. However, he was within the restrictions on that, correct? He was within the setback lines on the, there's a minimum boundary line. The setback line says there's a minimum boundary line. And that was a setback line required by the city of Carbondale. And therefore, the association couldn't approve anything in front of that because the plot wouldn't be approved without that setback. But he doesn't intend to build in front of that, is my understanding, unless I'm to build it even further back from the Carbondale restrictions. Right. The association is dictating the location where he can construct his house. And I think that is given, that authority is given to them through Article 5, which says that the nature, kind, shape, type, materials, and location of any proposed dwelling needs to be approved by the association, by the building committee prior to its commencement. So the setback line established by the city of Carbondale was a restriction on the association itself. It couldn't approve anything in front of that line. Right, but he's never, there never was any showing that he was going to go further forward. The question is, does he have to go like 15 feet farther back from the Carbondale line? That's correct, Your Honor. And that is in contest right now also. He's contesting that too? Yes. Okay. Yeah, there is no dispute whether he's in front or behind the Carbondale line. We, I think. But the association wants him to go back further. Right. Okay. And he doesn't want to? Correct. Okay. The facts of this case are not in dispute, Your Honor. The defendant knew and admitted that he had had the covenants prior to ever purchasing his property. He was given a copy by the association before he purchased the property. And he has admittedly commenced construction without obtaining the written approval required under Article 5. The defendant's argument is because Article 5 does not say that the approval is at the discretion of the building committee, then the committee or the association does not have the discretion to disapprove plans that meet the requirements of Article 6. This argument is wrong for two reasons. First, nowhere in the covenants does it state that if the plans meet the minimum requirements under Article 6, they must be approved under Article 5. Secondly, although the specific word discretion is not in Article 5, the express language of Article 5 grants the building committee the right to approve or disapprove the nature, kind, shape, height, materials, and location of any proposed improvement within the subdivision. And that's simply what the association did in this case. As the second district said in Westville Homes, a restrictive covenant in which the developer reserves the right to consent to building plans will be enforced, but the exercise of power of review in that particular case must be reasonable. Since the express language of the covenants requires you get approval prior to construction, the threshold question then is, was the association's denial of the defendant's plans reasonable? And as I've already stated, the plans were rejected for two reasons. One, because his house would be 5 to 6 feet of foundation block exposed at the back of his house. And secondly, because his proposed house was going to be built 15 feet in front of the houses on either side of him. The association gave the defendant four options. First, if he would move his house back in line with his neighbors and construct a there. Secondly, if he didn't want a walkout basement, he could move his home in line with the neighbor's properties and use fill dirt to cover the exposed foundation. Third, if he didn't want to change his plans at all, he could trade his lot for another lot within the subdivision that was flatter and would be more conducive to the type of construction he was hoping to build. Or finally, he could simply sell his lot back to the developer for the price that he paid for it. This case is similar to the Saddle Hills and Yorkshire case where the lot owners needed to get approval under a provision similar to Article V, yet failed to get approval and were enjoined by the court. The defendant must comply with all the covenants, not just one. As this district has stated in the case mentioned by opposing counsel Gerber v. Hamilton, covenants are not to be interpreted in a manner that ignores or overrides the specific language or obvious purpose of a restriction. If we look at the purpose of the restriction as being to maintain conformity and keep unsightly and houses in bad taste out of the community, defendant's interpretation would completely defeat that purpose and the specific language of Article V. Defendant's argument would lead to absurd results because homeowners could construct any unsightly house they wanted so long as it met the minimum requirements stated under Article VI. And again, that defeats the purpose of these covenants and the express language of Article V that requires all construction must be approved before it is commenced. These facts are undisputed. Defendant was aware of the covenants prior to purchasing the property. Article V of the covenants requires that you obtain approval prior to construction. It is undisputed that defendant's construction would leave five to six feet of foundation block exposed at the back of his house. It is undisputed that his house would be 15 feet closer to the road than the houses on either side of him. And it is undisputed that defendant was given reasonable options to accommodate the kind of construction he wanted. Defendant has commenced construction without obtaining approval required under Article V. Because the covenants require approval prior to commencement and defendant has admittedly commenced construction without such approval and the defendant has failed to prove the association's non-approval was in any way reasonable, arbitrary, or violated some fundamental right, the trial court was proper in granting the association's motion for summary judgment and its decision should be affirmed. That concludes my argument, Your Honors. I believe we've got some questions. Thank you, Counsel. Counsel? The opposing counsel argues that the language of the covenants does not prohibit the committee from denying plans that conform with Article VI. The problem I see with that argument or that point of view is the committee or the billing committee or the homeowners committee are the folks that wrote these covenants and restrictions and if they intended it to say that, they should have written it in there. That's exactly what Watts v. Fritz says. Say what you mean and mean what you say. It doesn't say that in these covenants. That may be unfortunate for the homeowners association, but the fact of the matter is it doesn't grant them that right to dictate where on the lot my client builds his house as long as it fits within the setback lines, nor does it allow them to say, no, your 2,000 plus square foot house is not big enough. We want you to put a basement in it and make it a 3,000 square foot house or a 5,000 square foot house, whatever it may end up being. These covenants simply do not provide them that right. The opposing counsel references the Westfield home and the Saddle Hill cases as in support of the proposition. What about the alternative that the opposing counsel said to leave the house the way the plans are and then just put build dirt in? Judge, to get to that question and that issue would be, is that a reasonable request by the homeowners committee? Well, unless they have the discretion or the right to dictate that type of request, which I don't believe they do. Our position is that is not an option. I just thought that would be probably a heck of a lot cheaper than having a home go 2,000, 3,000 square feet by adding a basement. Just to put some dirt field behind them. I agree, Judge. The question is how much dirt field depending on the slope of the house. I think that would be a question of fact, whether that's reasonable based on the slope and how much dirt you have to put in. And so I think that would require at least a remand for hearing on that issue to determine whether that's reasonable compared to what Mr. Millett's plan is to build his house where he has it set on that lot and compare those two possibilities and find out which makes more sense. But I believe that's a question of fact in this case. The two cases cited by opposing counsel, Westfield Homes and Saddle Hills, in both of those cases, such as in Westfield Homes, the provisions of their covenants stated that the architectural review committee shall in its sole discretion have the right to refuse to approve any such construction plan, specifications, or grading plan for aesthetic or other reasons. Saddle Hill had similar language in its case in its covenants that said the architectural review committee shall in its sole discretion have the right to refuse to approve any such construction plans or specifications, grading plan, or for aesthetic or other reasons. That language is not in these covenants. Mr. Millett bought this property. He had the covenants in advance. He reviewed those. It doesn't give any such discretion or authority to the building committee. It does specify what restrictions are on him with regard to a house. He meets those restrictions and they come up with some new rules that aren't written anywhere. That's just not fair, nor does that bode well for the transaction of real estate sales and purchases because every time that someone buys a piece of property that's subject to restricted covenants that have language similar to the one in this case, they're not going to be able to know what those restrictions might be and likely won't buy the property or result in more litigation. So based on the language in these covenants, I'm asking this court to find that the trial court erred in granting Summer's judgment because she misinterpreted or misconstrued these covenants by finding that there is some discretion granted to the Homeowner's Association. And because of that discretion, she also found that their four options were reasonable without actually any evidence other than the affidavits. For those reasons, I'm asking this court to reverse the trial court's Summer's judgment order. Thank you very much. Thank you, Counsel. We appreciate the briefs and arguments of counsel. We'll take the case under